IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Melvin E. Tadlock,                         )<br>                                                      )<br>                          Plaintiff,          )<br>                                                      )<br>vs.                                                 )<br>                                                      )<br>Michael J. Astrue,                          )<br>Commissioner of Social Security,  )<br>                                                      )<br>                          Defendant.     )<br>_____) | Civil Action No. 8:06-3610-RBH-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

     This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

     The plaintiff, Melvin E. Tadlock, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

     The plaintiff, 46 years old at the time of his alleged onset of disability in July 2002. (R. at 39), and 51 years old at the time of the Administrative Law Judge's (ALJ) decision on October 3, 2006. (R. at 23, 110).  The plaintiff has a high school equivalent education (GED) (R. at 157), and has past relevant work experience as a chemical mixer. (R. at 164-71.) He claims he is disabled because of two heart attacks, diabetes, high blood pressure, and high cholesterol, which precludes him from performing heavy lifting and prolonged standing. (R. at 151.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) in August 2002. (R. at 110-12.) The applications were denied initially and on reconsideration by the Social Security Administration. (R. at 75-79, 82-84.) The plaintiff requested a hearing before an ALJ (R. at 87-88), which was held on December 14, 2005. In a decision dated January 19, 2006, the ALJ found that Plaintiff was not disabled. (R. at 66-71). The Appeals Council vacated this decision and remanded the plaintiff's case for further administrative proceedings. (R. at 99-102). On August 17, 2006, a second administrative haring was held, and the ALJ found Plaintiff was not disabled in a decision dated October 3, 2006. (R. at 15-23). As the Appeals Council denied the plaintiff's request for review (R. at 7-9), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant filed an application for Disability Insurance Benefits and Supplemental Security Income on August 26, 2002, and he is insured for benefits at least through the date of this decision.
>
> (2)    The claimant has not engaged in substantial gainful activity since his alleged onset date.
>
> (3)    The medical evidence establishes that the claimant has coronary artery disease, diabetes with neuropathy, high blood pressure, and depression, which are "severe" medically determinable impairments within the meaning of 20 C.F.R. § 404.1521. However, the claimant has not established an impairment, or combination of impairments, which meets or is medically equal to any of the Listing of Impairments in appendix 1, Subpart P of Social Security Regulation No. 4.
>
> (4)    The claimant retains the residual functional capacity to perform "light" and "sedentary" work, with no more than occasional pushing/pulling wit his arms, no climbing of ladders or scaffolds, no exposure to hazardous equipment, and no prolonged standing and walking without the ability to change positions as needed.
>
> (5)    The claimant is unable to perform his past relevant work.

(6) The claimant was a "younger individual" on his alleged onset date and is currently "closely approaching advanced age," with a high school education, and no transferable skills acquired from past relevant work.

(7) Based on an exertional capacity for "light" work, and the claimant's age, education and work experience, Section 404.1569 and Rules 202.14 and 202.21, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

(8) Even if claimant's non-exertional limitations do not allow him to perform the full range of "light" work, using the above cited rule in conjunction with the credible testimony of the vocational expert, warrants a finding that there are a significant number of jobs in the national economy which the claimant could perform. The vocational expert identified the following unskilled "light" positions: small parts assembler, D.O.T. 706-684.022 (1,500 positions in North Carolina; 890 positions in South Carolina); amusement and recreation attendant, D.O.T. 344-667.010 (1,580 positions in North Carolina; 586 positions in South Carolina); and laundry folder, D.O.T. 389-687.018 (830 positions in North Carolina; 400 positions in South Carolina). The vocational expert identified the following unskilled "sedentary" positions which were appropriate for the claimant prior to September 12, 2005, when he attained the age of 50: charge account clerk, D.O.T. 205-367.014 (1,015 positions in North Carolina; 480 positions in South Carolina); and semi-conductor bonder in computer components, D.O.T. 726-685.066 (2,400 positions in North Carolina; 1,240 positions in South Carolina) .

(9) The claimant is not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 404.1520(f).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

>has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial

evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to permit the plaintiff to fully testify concerning his treatment history, thereby justifying consideration of new evidence; (2) failing to recontact a consulting physician concerning an apparently inconsistent medical opinion; (3) failing to include the plaintiff's social limitations in his Residual Functional Capacity ("RFC") assessment; and (4) failing to have the Vocational Expert ("VE") clarify a discrepancy between the jobs he identified, which the plaintiff could perform, and the requirements of those jobs as defined by the Dictionary of Occupational Titles ("DOT"). Based on a request for the ALJ to consider new evidence, the plaintiff requests a remand pursuant to sentence six of 42 U.S.C. §§405(g) and 1381(c)(3). Based on the other

allegations of error, the plaintiff is seeking remand pursuant to sentence four of those sections.

**I.     New Evidence**

As part of his initial objection to the ALJ's decision, the plaintiff requests that the case be remanded for consideration of new evidence. Specifically, the plaintiff has submitted his most recent medical records from 2006, which he contends shows his serious and continued need for treatment. (See Pl. Brief Ex. A.) The plaintiff claims that good cause exists for consideration of these records.

The Court may remand a case pursuant to sentence six of 42 U.S.C. § 405(g), "upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." *Id*. A district court may remand a social security case on the basis of newly discovered evidence, when a plaintiff satisfies four prerequisites:

> (1)   the evidence must be relevant to the determination of disability at the time the application was first filed and not merely cumulative;
> (2)   it must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him;
> (3)   there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and
> (4)   the claimant must present to the remanding Court at least a general showing of the nature of the new evidence.

*See* 42 U.S.C. § 405(g); *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir.1985). The defendant has not contested the plaintiff's showing as to elements one, two, and four. Rather, the defendant argues that the evidence is simply not material.

In regards to the first element, the plaintiff argues that there exists good cause for the remand because he was proceeding *pro se* and the ALJ failed to advise the plaintiff of the importance of providing additional evidence to the Commissioner. Good cause has been found to "remand where the administrative law judge fails diligently to explore all relevant facts especially in cases of uneducated, *pro se* claimants and where the absence

6

of counsel appears to prejudice a claimant." *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981). The government does not contest this cause shown.

Concerning the second element, the plaintiff contends that the evidence is new insofar as it did not exist at the time of the administrative proceedings[2] and not duplicative or cumulative in that it includes additional treatment notes documenting treatment and containing objective clinical findings during a time relevant to the ALJ's decision which had not been previously submitted.[3] Again, the defendant does not disagree that the plaintiff's evidence is either new or essentially unique in the record.

As to the fourth element, the plaintiff has characterized the nature of the new evidence as medical records demonstrating decreased sensation in the plaintiff's feet and a rejoinder to the ALJ's conclusion that the plaintiff had not returned for treatment following his March 2006 visit (R. at 18). (See Pl. Brief Ex. A.) The defendant does not object to this characterization of the evidence.

On the final issue of materiality, the plaintiff emphasizes two considerations. First, the plaintiff argues that the new records provide objective evidence to support the plaintiff's allegations of decreased sensation in his feet, which limits his ability to stand and walk. Specifically, the new evidence revealed a decreased sensation in his feet and legs as measured both by a sensory exam—decreased pinprick sensation—and "decreased distal pulses of the posterior tibial and dorsalis pedis arteries bilaterally which could not be palpated or auscultated." (Pl. Brief Ex. A 4, 6-7, 16-17.) The plaintiff argues, therefore, that the "new evidence provides support for Tadlock's assertion that his peripheral neuropathy—an impairment that the ALJ found was severe—limits his ability to stand and walk." (Pl. Brief at 22.)

---

[2] The hearing was held on August 17, 2006. The new evidence includes medical records from December 2006.

[3] The new evidence also includes relevant medical records from November 2005, March 2006, and June 2006.

Second, the plaintiff contends that the evidence is necessary to rebuff the ALJ's credibility determination. Specifically, the plaintiff contends that the ALJ discounted his credibility based on the mistaken assumption that the plaintiff did not return for further treatment following his March 2006 exam. The plaintiff argues that the new records are obviously evidence of the plaintiff's attempts to seek further treatment after March 2006.

The plaintiff believes that there is a reasonable likelihood that the ALJ would have believed the plaintiff's subjective allegations in the face of objective evidence and records demonstrating a continued need for treatment. Ultimately, the plaintiff argues that were the ALJ to conclude that the plaintiff was reasonably limited in the amount of time that he could stand and walk, his RFC would be reduced to the sedentary exertional level. The plaintiff contends that because the plaintiff is 50 years old, he would be considered disabled at that exertional level. *See* 20 C.F.R. Pt. 404, Subpt. P , App. 2 Rule 201.10.

The Court disagrees that the new evidence is material. First, the ALJ expressly concluded in his RFC assessment, that the plaintiff should be limited to ***"no prolonged standing and walking without the ability to change positions as needed***." (R. at 20, 22.) This limitation was included in his hypothetical to the VE. (R. at 56.) The ALJ expressly stated that these exertional limitations "are to compensate for the claimant's history of . . . diabetes with neoropathy." (R. at 20.) In other words, the exertional limitation that the plaintiff contends necessitates consideration of the new evidence was already a part of the plaintiff's RFC for the precise reasons now alleged. The plaintiff has not argued or explained what greater constraint to his ability to stand and walk would be imposed by the ALJ based on the new evidence.

Second, the plaintiff misrepresents the ALJ's basis for discounting the plaintiff's credibility. The ALJ did not discount the plaintiff's credibility because he had not returned for treatment ***after*** March 2006, as the plaintiff contends. The ALJ was emphatically persuaded by the fact that the plaintiff did not "report disabling tingling and numbness in his hands and feet to any <u>treating</u> physician ***until*** March 2006." (R. at 20 (underlined emphasis

in original; other emphasis added).) Since all of the plaintiff's records relate to visits after March 2006, they would not be material to the ALJ's conclusion that he had made no such reports prior to March 2006.

Lastly, the defendant argues that the new evidence is not materially inconsistent with the ALJ's conclusions as to the plaintiff's limitations in the lower extremities. In support, the defendant cites the following examples contained in the new evidence. In May 2005, Dr. Medda found the plaintiff had a normal diabetic foot examination except for some callouses. (Pl. Brief Ex. A at 26.) In April 2006, Dr. Medda indicated that the plaintiff's symptoms of neuropathy improved with medication. *Id*. at 8. In June 2006, Dr. Maloney noted that the plaintiff "no longer had itching or significant pain in the legs" after starting medication. Although, he complained of bilateral foot pain, his gait and motor strength in his legs were grossly normal. Although he had decreased pinprick over the distal legs and feet, he was grossly intact to light touch. *Id*. at 6. Finally, in December 2006, Dr. Fox found the plaintiff's motor strength was normal; his deep tendon reflexes were symmetric; his gait was normal; monofilament testing was negative; he had decreased pulses; and his vibratory sense was intact. *Id*.

The Court has reviewed the evidence and will not speculate as to how the ALJ might consider it. Reading it fairly, there is evidence both consistent and inconsistent with the plaintiff's allegations of severe impairment to walking and standing. (*See, e.g., id.* at 6-7.) Regardless, the records do not create any reasonable likelihood that the ALJ would come to a different determination. *See Woolf v. Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993). The ALJ has already included the exertional limitation about which the plaintiff complains, and the plaintiff has not suggested what additional limitations would be imposed. The Court declines to recommend a remand under sentence six, as a result.

For the same reasons, whatever error the ALJ made in executing his duty to explore the record with the plaintiff, *see Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996) and *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980), is harmless. *See Mickles v. Shalala*, 29 F.3d 918,

921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). In that regard, the plaintiff contends that if the ALJ had allowed the plaintiff to properly answer questioning about treatment he pursued since the time of the initial hearing (R. at 42), the ALJ would have been made aware of the additional treatment sought by the plaintiff in June, 2006. The plaintiff argues that the ALJ could have avoided the mistaken conclusion that the plaintiff had sought no other treatment since March of that same year, as a result. As discussed, however, the ALJ was compelled by the dearth of treatment, and reports, sought, and made, *prior* to March 2006 not since. (R. at 20.) Accordingly, there was no mistaken conclusion to avoid. More critically, and as already stated, the plaintiff has not explained how the visit in June 2006 would have recommended an exertional limitation not already imposed by the ALJ's RFC assessment (R. at 20, 22). Any error, therefore, is harmless.

The plaintiff also identifies what he considers to be the ALJ's mischaracterizations of his testimony concerning daily activities. (Pl. Brief at 23; R. at 46, 51, 53 (plaintiff's testimony); R. at 17 (ALJ's summary).) The Court has reviewed the testimony and the ALJ's decision and simply disagrees that the ALJ's summary of the plaintiff's activities materially misrepresents them, if it misrepresents them at all.

## II.     Recontact with Consulting Physician

The plaintiff next contends that the ALJ erred in not recontacting Dr. Darlington Hart, who performed a consultative physical examination. The ALJ expressly indicated in the record that Dr. Hart's opinion appeared internally inconsistent and that he did not know what Dr. Hart's recommendation precisely meant. (R. at 19.) The plaintiff argues that this confession required the ALJ to either recontact Dr. Hart for clarification or contact an examining physician for an opinion as to the plaintiff's physical impairments.

The ALJ was not required to recontact Dr. Hart. An ALJ must recontact medical sources only "when the evidence . . . is inadequate for us to determine whether you are

disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). While the plaintiff contends that Dr. Hart's recommendation was the only evidence of the plaintiff's physical limitations, other examining physicians gave opinions concerning the plaintiff's physical capabilities. (R. at 206-13, 228-34 (included review of Dr. Hart's records), 537.) Moreover, the record is voluminous. This case is not an instance where the ALJ was simply indifferent to a patently incomplete record. *See, e.g., Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981) (finding error where ALJ did nothing more than take rambling, incoherent testimony of the claimant). While the ALJ could have done more, the Court finds no reversible error in his decision not to recontact Dr. Hart or to inquire of other physicians concerning the plaintiff's physical limitations.

### III.     Social Functioning Limitations

The plaintiff further complains that the ALJ found the plaintiff had moderate limitations in social functioning but failed to include any such restrictions in his RFC. As the plaintiff contends, the ALJ acknowledged that the two State Agency consultants concluded that the plaintiff could perform simple, routine, repetitive tasks that did not require ongoing interaction with the public (R. at 19), but, without any explanation, only included the limitation to simple, routine, repetitive tasks in his RFC (R. at 20, 22). The plaintiff argues that the defendant has actually conceded this point in his brief and, therefore, the case should be remanded. In fact, the defendant concedes only that the ALJ did not account for such limitations in his RFC (Def. Brief at 20), but has argued that the omission by the ALJ was harmless insofar as three of the jobs identified by the VE do not require significant contact with people: small parts assembler, laundry folder, and semi-conductor bonder in computer components. The Court agrees with the defendant.

The ALJ expressly asked the VE whether there would remain work in the national economy which the plaintiff could perform considering his "adjustment disorder or depression" and his inability to perform any more than "unskilled simple routine repetitive work." (R. at 58.) The ALJ identified the three above-identified jobs. *Id.* The plaintiff's

adjustment and personality disorders were the basis of the State Agency consultants' RFC limiting public contact (R. at 200), which the plaintiff contends the ALJ did not consider. Accordingly, the VE necessarily testified that these three jobs did not require interaction with the public to an extent that could not accommodate the plaintiff's limitations in this regard. (See R. at 58.)

Moreover, the plaintiff has made no specific argument or presented any specific evidence that these three jobs require contact with people beyond what he can handle. Accordingly, any error of the ALJ in not including a limitation related to public contact in his RFC is harmless. *See Mickles*, 29 F.3d at 921.

### IV.     **Conflict with the Dictionary of Occupational Titles**

Lastly, the plaintiff argues that the jobs identified by the VE require a greater reasoning level than the ALJ found the plaintiff was capable of performing. Specifically, the plaintiff argues that each of the jobs identified by the VE required a reasoning level of GED: R2 or higher. (See Pl. Exs. B, C, E-G.) Jobs with an R2 reasoning level require an individual to carry out *detailed* but uninvolved written or oral instructions. *See id*; Dictionary of Occupational Titles, Revised, U.S. Department of Labor, 1991 WL 688702. By contrast, jobs with an R1 reasoning level require only the ability to carry out simple one- or two-step instructions. *See* Dictionary of Occupational Titles, Revised, U.S. Department of Labor, 1991 WL 688702. The ALJ, however, found that Tadlock's mental impairments restricted him to unskilled, simple, routine, repetitive work. (R. at 20.)

The ALJ gave these same limitations to the VE. (R. at 58.) Given these restrictions, the VE identified 3 light, unskilled jobs which he would be able to perform—parts assembler, (DOT 706-684.022), an amusement and recreation attendant, (DOT 344-667.010), and a laundry folder, (389-687.018)—and 2 sedentary, unskilled jobs which he would be able to perform—charge account clerk, (205-367.014), and a semi-conductor bonder in computer components, (726-685.066). (See Pl. Exs. B, C, E-G.) The VE stated that these jobs were consistent with their descriptions in the DOT, "as far as [she] knew."

(R. at 57.)  No specific discrepancies between the plaintiff's reasoning level and the reasoning level required by the prescribed jobs was ever discussed.

Occupational evidence provided by a VE generally should be consistent with the occupational information provided by the DOT.   The ALJ has a duty to ask the VE to identify and explain any conflicts with the DOT.  *See* SSR 00-4p.  The relevant portion of SSR 00-4p reads as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p.  Accordingly, the ALJ must elicit a reasonable explanation for any "apparent unresolved conflict" between the VE evidence and the DOT before relying on the VE to support a determination about whether the claimant can perform any work.  *See id.*  A VE's conflicting testimony can only be used if the ALJ finds that it is based on "other reliable publications" or the expert's own "experience in job placement or career counseling." SSR 00-4p, 2000 WL 1898704 at *2; *see also Fisher v. Barnhart*, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (Unpublished).

The plaintiff is correct that each of the jobs identified by the VE requires at least the ability to perform "detailed but uninvolved written or oral instructions."  (See Pl. Exs. B, C, E-G.)  In fairly cursory fashion, the defendants only response is that a Tenth Circuit case indicates that level 2 reasoning is, in fact, consistent with an ability to perform "simple and routine work tasks."  *Hackett v.Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).  *Hackett* is not dispositive here.

First, it is not controlling authority. Second, the court in *Hackett* made no specific determination that level 2 reasoning is consistent with an ability to perform "simple and routine work tasks." Rather, in dicta, the Tenth Circuit expressed an opinion that such a reasoning level might be consistent but remanded the case for clarification from the VE.[4]

Such a clarification is also prudent in this case. On its face there appears to be a conflict between what the plaintiff is capable of performing and what the recommended jobs require, which necessitates explanation from the VE. *See* SSR 00-4p. The Court has not been given any authority or evidence to reconcile that discrepancy and will not substitute its own vocational judgment as to whether the plaintiff can perform the work.

It is recommended, therefore, that the case be remanded so that a VE can give testimony as to whether the plaintiff can perform the recommended jobs considering her inability to do more than simple and routine work.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§405(g) and 1381(c)(3), with a remand of the cause to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991). It is further recommended that the plaintiff's request for remand under sentence six of 42 U.S.C. §§405(g) and 1381(c)(3) be DENIED.

IT IS SO RECOMMENDED.

S/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

February 11, 2008
Greenville, South Carolina

---

[4] In Hackett, the issue was whether the plaintiff, who was limited to simple and routine work could perform level 3 reasoning. *See Hackett*, 395 F.3d at 1176.